UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH NOAH, | |
| Plaintiff, | Case No. _____ |
| v. | |
| NATIONAL LINK, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Joseph Noah by and through his attorney, Sean L. Ruppert, Esquire of Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

### II. Jurisdiction and Venue

2. This action arises under Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action

is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

5. Plaintiff, Joseph Noah ("Plaintiff"), is an adult individual with a primary residence located 129 Aspen Drive, Beaver, Pennsylvania, 15009

6. Defendant, National Link, is a business located at 300 Corporate Center Drive, Suite 300, Moon Township, PA 15108.

### IV. Facts

7. Plaintiff worked for Defendant since 2013. For the last two years, Plaintiff was the assistant vice-president of closings for Defendant.

8. Plaintiff began experiencing severe headaches in June of 2015.

9. In August of 2015, Plaintiff's headaches became worse and he had to miss work on several occasions due to his symptoms.

10. Plaintiff requested formal leave of absence ("FMLA") paperwork from the Defendant. He was unable to complete the paperwork until he was seen by his neurologist, Dr. Barry Reznik.

11. Plaintiff had to miss work for his symptoms. President for Defendant, Kathleen Krol, told Plaintiff not to log on to his work account and that she would take care of Plaintiff's staff while he was out sick.

12. Thereafter, Ms. Krol began to harass Plaintiff. She ridiculed and reprimanded him for not logging on to his work account and "taking care of business items." Plaintiff notified Diane Burch from Defendant's human resources department about this harassment.

13. In September of 2015, Plaintiff experienced a severe headache which lasted about six (6) to seven (7) days and was accompanied by nausea and vomiting.

14. On September 18, 2015, Plaintiff was seen by Dr. Reznik and was diagnosed with migraines. He was prescribed with two very strong medications for his headaches.

15. Plaintiff began to experience severe side-effects from his medication and he felt very nauseous and often vomited. He was unable to drive because of his symptoms and he could not look at lights or moving objects without feeling sick or dizzy.

16. Plaintiff contacted Defendant to have his FMLA paperwork sent to Dr. Reznik on September 18, 2015. Plaintiff's FMLA paperwork was faxed to Dr. Reznik by Ms. Burch. Dr. Reznik gave no indication to the Plaintiff that he would not complete his FMLA paperwork.

17. Plaintiff made numerous attempts to obtain his FMLA paperwork from Dr. Reznik to no avail. Plaintiff's fiancé even went to Dr. Reznik's office to try and get his paperwork and it was thrown at her by the receptionist. Plaintiff informed Defendant that Dr. Reznik would not complete his FMLA paperwork.

18. Ms. Krol, told Plaintiff that he needed a doctor's excuse for every day that he had missed work due to his disability.

19. Dr. Reznik would not provide Plaintiff with any medical excuses for his absences. Plaintiff obtained council who wrote a letter to Dr. Reznik regarding his FMLA paperwork and excuses. Dr. Reznik still did not comply.

20. On September 22, 2015, Plaintiff was admitted to the emergency room due to an acute flare of his medical condition. Plaintiff received a doctor's excuse for the days he had missed work while he was in the hospital, which he gave to his employer.

21. On September 23, 2015, Defendant approved Plaintiff's emergency room doctor's excuse. Plaintiff was informed by Ms. Krol that he still had to turn in paperwork and excuses for the other days that he had missed. He informed Ms. Krol that he was still having trouble getting any excuses from Dr. Reznik.

22. Plaintiff contacted Dr. Reznik's office regarding his FMLA paperwork and doctor's excuses for his absences. Dr. Reznik refused to fill out Plaintiff's FMLA or provide him with excuses. He told Plaintiff that he was unaware that Plaintiff was in need of absence excuses.

23. Plaintiff was informed by Defendant that his FMLA paperwork was not approved because he was unable to complete it in the correct timeframe.

24. Ms. Krol told Plaintiff that he had to report to work on September 24, 2015 with doctor's excuses for all of his absences or else she would accept his resignation. Plaintiff told Ms. Krol that he was unable to get any paperwork from his doctor for his absences, despite his many attempts.

25. On September 25, 2015, Plaintiff received a letter from Defendant, stating that if he did not return to work on September 28, 2015 they would accept his resignation.

26. On September 27, 2015, Plaintiff's company email was shut off. He sent an email to Defendant, stating that he had no intention of resigning and he was trying his best to obtain his excuses from Dr. Reznik.

27. On September 28, 2015, Plaintiff received a letter from Defendant, stating that he will receive his termination of health benefits package in the following days. Plaintiff received messages from his co-workers stating that "they heard" and word was out that he had been terminated. Plaintiff was wholly unaware that he had been terminated.

## V. Allegations

### Count I
### Violation of the Family Medical Leave Act - Termination

28. The preceding paragraphs are incorporated herein as if set forth at length.

29. Plaintiff was employed by the Defendant for more than one (1) year prior to his request for FMLA leave.

30. Plaintiff worked more than 1,250 hours in the preceding twelve (12) months prior to his request for FMLA Leave.

31. Defendant employs more than 50 individuals within a 75-mile radius of the location where the Plaintiff worked.

32. Defendant was made aware of the Plaintiff's illness when the Plaintiff requested FMLA paperwork.

33. Defendant received a Doctor's note from the Plaintiff's emergency room visit detailing his condition.

34. Defendant acknowledged this note, but informed Plaintiff that he needed to provide a note for *every* day he missed.

35. The court has held, in *Schaar v. Lehigh Valley Health Services Inc.,* 598 F.3d 156 (3d Cir. 2010), that the testimony of the employee, combined with some medical evidence, can be enough to satisfy the employee's burden of proof for FMLA leave.

36. Plaintiff explained the condition to the Defendant on multiple occasions.

37. Plaintiff provided medical evidence when he supplied the note from the Emergency Room.

## **Request for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants for the following:

a. Loss of wages in excess of $50,000;

b. Front pay as deemed appropriate by the court;

c. Compensatory and punitive damages against the Defendant as allowed by law;

d. Plaintiff's legal fees;

e. Pre-judgment and continuing interest;

f. Court costs; and

g. Other such relief as the Court may deem just and proper.


/s/ Sean L. Ruppert
Sean L. Ruppert, Esquire
**KRAEMER, MANES & ASSOCIATES LLC**
PA ID: 314380
US Steel Tower
600 Grant St, Suite 660
Pittsburgh, PA 15219
(412)626-5550 Direct
(412)637-0144 Fax
sr@lawkm.com